## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

MARY DEAN, et al.,          )
                                   )
          Plaintiffs,      )
                                   )
v.                             )     Case No. 02-1019-WEB
                                   )
                                   )
THE BOEING COMPANY,      )
                                   )
          Defendant.      )
_____)

### MEMORANDUM AND ORDER

At a hearing on November 13, 2003, the Court considered Plaintiffs' request to modify the class period (Doc. 236), Plaintiffs' motion to decertify three of the Class Representatives (Doc. 256), *pro se* motions by the same three Class Representatives for an extension of time and to remove Class Counsel (Docs. 258 - 59), and Plaintiffs' motion for counsel to appear pro hac vice (Doc. 293). In addition, the Court entertained an oral motion to order a local attorney to join the existing Class Counsel. This Memorandum and Order supplements the Court's rulings at the hearing.

### I.     PLAINTIFFS' MOTION TO MODIFY THE CLASS PERIOD

#### A.     Background

Because this motion raises issues the Court resolved in its earlier orders on partial summary judgment and class certification, some background is required.

Plaintiffs filed their Complaint on January 16, 2002, and the First Amended Class Action Complaint (FACAC) on July 3, 2002. Plaintiffs brought their Title VII claims individually and "on behalf of a

proposed class consisting of all females employed by [Defendant] in the State of Kansas since January 16,

1996 . . . ." FACAC, at ¶ 13. Under a separately enumerated section entitled "**CONTINUING**

**VIOLATION**," Plaintiffs alleged as follows:

> [Defendant's] gender discrimination was the result of policies and practices dictated, known, tolerated, and/or deliberately ignored on a centralized basis at [Defendant's] Seattle headquarters. It constitutes a continuing policy and practice of discrimination on a Company-wide basis, and this policy and practice operated at least in part within the limitations period of this action. With discovery plaintiffs will be able to determine the exact date that these practices commenced and at that time will amend this Complaint to establish the opening date for membership in the Class.

FACAC, at ¶ 125 (emphasis in original). (Doc. 49.) Rather than amending their complaint a second time,

Plaintiffs established the opening date for membership in the Class when moving for class certification:

> Plaintiffs have determined the appropriate class period based on the statute of limitations applicable to their claims. * * * The class period for [P]laintiff's Title VII claims begins on March 30, 1999. This is 300 days before the earliest charge of discrimination by a class representative. See 42 U.S.C.S. § 2000e-5(e)(1). In Title VII class actions, the earliest charge of discrimination by any class representative is used to determine the starting date of the class period.

Memo. In Support of Class Certification, at 10 (citations and footnote omitted). (Doc. 138.).

Defendant responded to this statement in its motion for partial summary judgment. Defendant

agreed that the 300 day period from 42 U.S.C. § 20005(e)(1) applied in this case, but Defendant

calculated April 2, 1999, as the cut-off date, not March 30, 1999. In its discussion of the filing requirement

generally, Defendant cited *National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 122 S.Ct. 2061,

153 L.Ed.2d 106 (2002), for the proposition that "Title VII precludes recovery for discrete acts of

discrimination that occur outside the 300-day limitation period." Memo. in Support of Partial Summary

Judgment, at 20.  Defendant noted that the limitation period may extend past 300 days for hostile work environment claims under the continuing violation theory, and Defendant reserved its rights to defend against "individual harassment claims should [P]laintiffs establish the existence of a continuing violation." *Id.*, n. 3.

Plaintiffs responded to Defendant's assertions by stating, "Plaintiffs . . . agree that the 300-day period marks the starting point for actionable events, and that events occurring prior to that cut-off date are generally not actionable." Memo. In Opposition to Partial Summary Judgment, at 9.  Plaintiffs further agreed that the cut-off date was April 2, 1999, "because that is the earliest Title VII limitations period of any named plaintiff." *Id.* (quoting Defendant's Memo. In Support of Partial Summary Judgment, at 23). Plaintiffs also cited the *Morgan* case and concluded, "events occurring ***during and after*** the 300-day filing period are actionable in this case." *Id.* (emphasis in original.).

The Court considered Defendant's motion for partial summary judgment in its Memorandum and Order filed April 25, 2003.  Given the parties' agreement on April 2, 1999, as the cut-off date, the Court granted "summary judgment to Defendant on Plaintiffs' class claims under Title VII regarding events occurring prior to that date."  Memorandum and Order, at 7.  The Court then turned to the class certification issue and certified a class for claims running from April 2, 1999.  *See id.*, at 24.

On June 17, 2003, Plaintiffs filed the instant motion asking the Court to modify the class period for the Title VII compensation claims back to January 1, 1997, and for the overtime claims back to January 1, 1998.  Plaintiffs did not seek to extend the period for the promotion claims.  In spite of the prior briefing, which included citations to the *Morgan* case from both sides, Plaintiffs' alleged:

> While this Court has considered and resolved the issue of when the . . .
> 300-day "pre-filing" period began – namely, April 2, 1999 – it has ***not***
> considered whether [P]laintiffs may obtain remedies for discriminatory

conduct occurring *prior* to that date.  Indeed, neither side has yet briefed the important question of whether the "continuing violations" doctrine applies to the facts of this case, thereby allowing Plaintiffs and the Class to recover injuries suffered prior to the "pre-filing" period.

Motion to Modify, at 2 (emphasis in original).

B.    Discussion

As the Court stated at the hearing, the Plaintiffs' motion will be denied on both procedural and substantive grounds.

1.    Procedural grounds

Plaintiffs maintain the question is controlled by Rule 23, but it would make little sense to expand the class period over claims for which summary judgment has already been granted.  The issue, then, is whether the Court should revise its judgment in favor of Defendant on Plaintiffs' Title VII class claims for events occurring before April 2, 1999.  Defendant maintains Rule 60(b) controls, but that rule applies to "final" judgments, orders, or proceedings.  Fed.R.Civ.P. 60(b); 12 Moore's Federal Practice, § 60.23, 600-77 (3d ed. 2003)("Rule 60(b) does not govern relief from interlocutory orders . . . .").  By their nature, partial summary judgments are not final orders and are subject to revision at any time before the final order.  *See* Fed.R.Civ.P. 54(b) & 56(d); *Moses H. Cone Hospital v. Mercury Constr.*, 460 U.S. 1, 12, 103 S.Ct. 927, 74 L.Ed.2d 765, 778 (1983) ("every order short of a final decree is subject to reopening at the discretion of the district judge."); *Anixter v. Home-State Prod. Co., et al.*, 977 F.2d 1533, 1548 (10th Cir.1992)(partial summary judgment is not a final judgment pursuant to Rule 54(b)).

The Court must consider, then, the standard for reopening its partial summary judgment ruling.  In *Raytheon Constructors Inc. v. Asarco Inc.*, — F.3d —, 2003 WL 984623 (10th Cir., March 11, 2003),

-4-

a party sought reconsideration of an interlocutory order under a new Supreme Court decision.  The district court applied Rule 60, but the Tenth Circuit held the question was controlled by Rule 54(b), stating, "we will not review the district court's order for abuse of discretion, as we would a ruling on a Rule 60(b) motion.  Rather, we review de novo the district court's conclusions of law in its reconsideration of its order . . . . ."  *Id.*, at * 2.

Without concerning itself with the appellate standard of review, this holding raises the question whether the Court has discretion to decline reconsideration on procedural grounds, or whether it must make a de novo, substantive analysis of the Plaintiffs' arguments.  Unlike in *Asarco*, Plaintiffs do not bring a new and binding decision to the Court's attention.  The Court concludes, therefore, that it has no duty to make a de novo evaluation of the law, but rather that it may revisit its earlier ruling at its discretion.  *See Moses H. Cone Hospital*, 460 U.S. at 12, 74 L.Ed.2d at 778; 11 Moore's Fed. Prac., *supra*, at § 56.40[2], 56-281.

For a number of reasons, the Court will not do so lightly.  In a case provided by Plaintiffs at the hearing, *American Canoe Ass'n v. Murphy Farms, Inc.*, 326 F.3d 505, 515 (4th Cir.2003), the Fourth Circuit stated that the law of the case doctrine guides a district court's discretion in this situation.  As one commentator puts it:

> The fact that the district court possesses the power to revisit an earlier uncertified adjudication does not mean that the court should or must do so. * * * If motions based on the court's power under Rule 54(b) could compel the court to revisit those adjudications, much of the advantage in making the early rulings would be lost.  For this reason, the law of the case doctrine provides some protection from routine reexamination of interlocutory adjudications.  Although that doctrine, like Rule 54(b), does not restrict the power of the district court to revisit its earlier rulings, it does provide that the court should not depart from those rulings without

good reason . . . .

10 Moore's Federal Practice, at § 54.25[4], 54-89.

The Tenth Circuit has characterized a grant of partial summary judgment as the law of the case. *See Jicarilla Apache Tribe v. Supron Energy Corp.*, 782 F.2d 855, 857 (10th Cir.1986). Under the law of the case doctrine, "'when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages of the same case.'" *United States v. Monsisvais*, 946 F.2d 114, 115 (10th Cir. 1991) (quoting *Arizona v. California*, 460 U.S. 605, 618, 103 S.Ct. 1382, 1391, 75 L.Ed.2d 318 (1983)). While it is a rule of practice and not a limit on a court's power, "the circumstances justifying a departure from the law of the case are narrow." *Id.* at 117. A court should adhere to its previous ruling unless the evidence is substantially different, controlling authority has made a contrary decision, or the previous decision is clearly erroneous and should be modified to prevent a manifest injustice. *See id.*

As already noted, the Plaintiffs do not come forth with new authority. In fact, their assertion that the continuing violation issue had not been briefed is incomplete. They raised the theory in the First Amended Complaint and said they would clarify their position later, and they then came forward and affirmatively stated that the 300-day limit would apply. This was an effective abandonment of the continuing violation theory, and Plaintiffs did not alter this choice during the extensive briefing on class certification and partial summary judgment.

The Court, in other words, was presented with a stipulation in all but name, which the Court then incorporated into an order which, on that point at least, was essentially an agreed order. Plaintiffs fail to acknowledge this, instead claiming the issue has not been briefed. The issue was certainly raised in the

briefs, and no new law gives the Court reason to revisit its ruling.

Plaintiffs also do not come forward with new facts.  Plaintiffs make some factual allegations in their motion, but these were either available earlier or do not substantially differ from prior allegations.

Finally, the Court does not believe its application of the 300-day limit is either clearly erroneous or works a manifest injustice.  The Court will discuss this conclusion when setting out the substantive reasons for denying Plaintiff's motion.  The Court declines, based on the law of the case doctrine, to revisit its earlier ruling.

The Court also holds that the Plaintiffs's motion is barred by laches.  The purpose of the administrative filing requirement is, "to give prompt notice to the employer."  *Morgan*, 536 U.S. at 121, 153 L.Ed.2d at 127 (quoting *Zipes v. Transworld Airlines, Inc.*, 455 U.S. 385, 398, 102 S.Ct. 1127, 71 L.Ed.2d 234 (1982)).  Where an employee unreasonably delays filing the administrative charge, and where this delay prejudices the employer, the defense of laches is available.  *See id.* at 121-22, 153 L.Ed. 2d at 127.

Defendant points to Plaintiffs' own declarations, which state their belief that they were subject to discrimination before they filed administrative charges in 2000, some identifying events allegedly occurring in 1997.  Defendant argues it was prejudiced by the delay because individuals who have information regarding the treatment of the class members may have retired, been laid off, or died.  Defendant's Wichita workforce declined by nearly 9,000 employees between 1997 and 2002.  *See* Response to Motion to Modify Class Period, at 19-20 (citing Reiling Decl. ¶ 6).

Plaintiffs' only response is to argue that Defendant was on notice of the continuing violation theory in 2000 when the *Beck* suit in was filed in Washington state, and in 2002 when Plaintiffs filed the instant

litigation.

As set out in the Memorandum and Opinion filed April 25, 2003, the earliest administrative filing by a named plaintiff was January 27, 2000, and the *Beck* suit was filed on February 25, 2000.  The *Beck* suit, therefore, provided little advance warning.  Regarding the continuing violation theory, the *Beck* complaint stated, "[p]laintiffs believe the unlawful practices in issue constitute continuing violations that have existed for decades.  With discovery plaintiffs will be able to determine the exact date that these practices commenced and shall at that time amend this Complaint to establish the "opening date" for the Class." Reply in Support of Motion to Modify, ex. 1, *Beck v. Boeing* Class Action Complaint, at 26 n. 2.  The *Beck* plaintiffs, like Plaintiffs here, promised more specificity later, but Plaintiffs do not indicate that Defendant ever received such notice in the *Beck* case, especially about the operations in Kansas, for which the *Beck* court refused to certify a class.

Plaintiffs contend that the delay in filing was insignificant, but Plaintiffs also claim, "[t]he years that [P]laintiffs propose to add to the Class period – 1997 and 1998 – were before the federal government's investigation of [Defendant's] treatment of women, when [Defendant's] underpayments to women were by far the most egregious."  Reply in Support of Motion to Modify, at 2.  If the most egregious disparities occurred during 1997 and 1998, it would have been reasonable to file then rather than wait until 2000 and expect redress for the earlier disparities.  The earlier disparities would also provide much of the basis for liability at trial, thus heightening the prejudice to Defendant.[1]

It is up to the Court to decide "'how – and how much – prejudice must be shown,'" and "'what

---

[1]Plaintiffs recognized at the hearing that back pay is not recoverable for dates more than two years before the administrative filing.  *See* 42 U.S.C. § 2000e-5(g)(1).

consequences follow if laches is established.'" *Morgan*, 536 U.S. at 122, 153 L.Ed.2d at 127 (quoting 2 B. Lindemann & P. Grossman, Employment Discrimination Law  1496-1500 (3d ed.1996).  At least some of the Plaintiffs delayed filing administrative complaints for approximately three years, and in the interim Defendant significantly reduced its workforce.  Plaintiffs litigated in Washington state for nearly two more years and then filed the instant suit, first abandoning the continuing violation theory and then raising it a year and a half into this litigation, during which time Defendant had further reduced its workforce.  The Court recognizes that this quantum of proof is not overwhelming, but together with the fact that Plaintiffs have failed adequately to address either their lack of diligence or the prejudice to Defendant, there is sufficient basis to conclude that Plaintiffs are barred by laches from maintaining their continuing violation theory.

2.     Substantive grounds

The *Morgan* case held that the continuing violation doctrine applies to hostile work environment claims, which "cannot be said to occur on any particular day," but rather are "the cumulative effect of individual acts."  536 U.S. at 115, 153 L.Ed.2d at 123.  The Tenth Circuit has stated the "[k]ey" to the *Morgan* holding is, "the determination that the series of acts constituting a hostile work environment constitute only one unlawful employment practice." *Davidson v. American Online*, Inc., 337 F.3d 1179, 1185 (10th Cir.2003).

In contrast,  "discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges."  *Morgan*, 536 U.S. at 113, 153 L.Ed.2d at 122.  As examples of discrete discriminatory acts, the Supreme Court identified "termination, failure to promote, denial of transfer, or refusal to hire . . . ." *Id*. at 114, 153 L.Ed.2d at 122.  These acts, even if they happen

repeatedly, may be said to happen on a particular day. Thus they are not one unlawful employment practice but rather many, each individually actionable even if related. *See* 42 U.S.C. § 2000e-5(e)(1) ("such charge shall be filed . . . within three hundred days after the alleged unlawful employment practice occurred . . . ."); *Morgan,* 536 U.S. at 110, 153 L.Ed.2d at 120 ("[a] discrete retaliatory or discriminatory act "occurred" on the day that it "happened.")

The acts alleged in this case, discriminatory compensation, which happens when an employee receives a paycheck, and discriminatory overtime, which happens when the assignment is made, fall on the discrete side of the divide. The statute which sets out unlawful employment practices, "includes among such practices numerous discrete acts," such as "'discriminat[ion] against any individual with respect to his *compensation* . . . .'" *Morgan*, 536 U.S. at 111; 153 L.Ed.2d at 120 (quoting 42 U.S.C. § 2000e-2 (emphasis supplied)). The *Morgan* court also cited *Brazemore v. Friday*, 478 U.S. 385, 395-96, 106 S.Ct. 3000, 92 L.Ed.2d 315, 328 (1986), which held that "each week's paycheck that [discriminates] is a wrong actionable under Title VII . . . ." *Id.* at 112; 153 at 121. The Tenth Circuit interpreted *Brazemore* to mean, "pay discrimination must be viewed as a continually recurring series of violations, each of which is separately actionable under Title VII." *Goodwin v. General Motors Corp.*, 275 F.3d 1005, 1010 (10th Cir. 2002). Discriminatory pay, in other words, "involves a series of *discrete*, individual wrongs . . . ." *Id*. (citation omitted, emphasis supplied).

From this the Court concludes that compensation, and by analogy overtime, are discrete acts. Other courts agree that compensation is a discrete act. *See Hildebrandt v. Illinois Dept. of Natural Resources,* – F.3d – , 2003 WL 22455904 (7th Cir., Oct. 30, 2003); *Quarless v. Bronx-Lebanon Hospital Center*, 228 F.Supp.2d 377, 382 (S.D.N.Y. 2002). Plaintiffs may still use prior discrete acts

as background evidence in support of a timely claim, however.  *Morgan*, 536 U.S. at 113, 153 L.Ed.2d at 122; *Croy v. Cobe Laboratories, Inc.*, 345 F.3d 1199, 1203 (10th Cir. 2003).

Plaintiffs argue, nevertheless, that compensation and overtime violations should be treated differently in the context of a disparate impact case.  In the approach suggested by Plaintiffs, the Court would analyze the continuing violation issue by focusing on the proof at trial, where a complaining party would typically employ statistical evidence to "demonstrate" that a respondent uses a  "particular employment practice which causes a disparate impact on the basis of race, color, religion, sex, or national origin . . . ."  42 U.S.C. 2000e-2(k)(1)(A)(i).

The analysis begins with a footnote in *Morgan*:  "[w]e have no occasion here to consider the timely filing question with respect to "pattern-or-practice" claims brought by private litigants as none are at issue here."[2]  536 U.S. at 115 n. 9, 153 L.Ed.2d at 123 n. 9.  Based on this, Plaintiffs contend that while *Morgan* ruled on serial violations of Title VII, it did not consider systematic violations.  Plaintiffs direct the Court to *Thiessen v. General Elec. Capital Corp.*, 267 F.3d 1095 (10th Cir.2001), which cites several cases holding that a continuing violation may be established by showing a systematic policy of discrimination which extends into the limitation period.  *Id.* at 1109 n. 9.  The *Thiessen* panel further stated in dicta that where a party successfully proves a pattern or practice of discrimination, such proof "will essentially resolve

---

[2]One commentator has characterized this statement as, "confusing, because under the statute 'pattern or practice' suits are to be brought by the EEOC or the Attorney General." 4 L. Larson, Employment Discrimination, § 72.08[4][c], 72-73 (2nd ed. 2003). The commentator suggests the Supreme Court likely meant pattern or practice style proof in private class action suits. *Id.* This Court used the term in that fashion in its Memorandum and Order of April 25, 2003. The primary characteristic of such a suit is a, "broad based challenge[] to employer discrimination, often with massive statistical presentations." 4 Larson, Employment Discrimination, at § 72.08[4][c], 72-74.

the question of whether plaintiffs can properly rely on the "continuing violation" doctrine and seek relief for alleged acts of discrimination occurring more than 300 days prior to the filing . . . ."  *Id. at 1109.*

The cases cited in *Thiessen* were:  *Purrington v. Univ. of Utah*, 969 F.2d 1025 (10th Cir.1993); *Morgan v. National R.R. Passenger Corp.*, 232 F.3d 1008 (9th Cir.2000); *Lawton v. State Mut. Life Assur. Co. of Am.*, 101 F.3d 218 (1st Cir.1996).  *Purrington* held that a continuing violation may be established by, "either (1) a series of related acts . . . or (2) the maintenance of a company-wide policy of discrimination . . . ."  996 F.2d at 1028.  The Tenth Circuit has held that *Purrington* was abrogated by *Morgan,* however.  *Croy,* 345 F.3d at1202.  The *Lawton* case also sets out the serial violation/systematic violation test, but so far no court in the First Circuit has reviewed that holding under *Morgan*.  *See* 101 F.3d at 221-22.

The *Morgan* case cited in *Thiessen* was the Ninth Circuit decision which was affirmed in part and reversed in part by the Supreme Court.  536 U.S. at 122, 153 L.Ed.2d at 128.  In reviewing the decision, the Supreme Court set out the Ninth Circuit's test, which like the Tenth and First Circuits recognized both serial and systematic violations:

> In the Ninth Circuit's view, a plaintiff can establish a continuing violation . . . in one of two ways.  First, a plaintiff may show a series of related acts one or more of which are within the limitations period. * * * Second, a plaintiff may establish a continuing violation if he shows a systematic policy or practice of discrimination that operated, in part, within the limitations period – a systemic violation.

536 U.S. at 107, 153 L.Ed.2d at 118.  The Supreme Court noted that the Ninth Circuit had found a continuing violation for serial violations, but the Supreme Court reversed this ruling, holding that, "[a]ll prior discrete discriminatory acts are untimely filed and no longer actionable."  536 U.S. at 115, 153 L.Ed.2d

-12-

at 123.  Attached to this sentence was the footnote which excluded pattern or practice cases from consideration.

The Court takes the Plaintiffs' point, but it disagrees with the suggestion that the pre-*Morgan* category of systematic violations was unreached by that decision.  The Tenth and Ninth Circuits have interpreted *Morgan* to mean that systematic violations in individual Title VII cases are subject to the discrete violation rule.  *See Davidson,* 337 F.3d at 1185-86 ("Each discrete refusal to hire is a separate actionable unlawful employment practice . . . . * * * This remains true even if the discrete act was part of a company-wide or systematic policy.");[3]  *Lyons v. England*, 307 F.3d 1092, 1107  (9th Cir.2002) ("If a plaintiff chooses to bring separate claims based on each discriminatory act, his assertion that this series of discrete acts flows from a company-wide, or systematic, discriminatory practice will not succeed in establishing the employer's liability for acts occurring outside the limitations period because the Supreme Court [in *Morgan*] has determined that each incident of discrimination constitutes a separate actionable unlawful employment practice.")

That being said, both *Davidson* and *Lyons* followed *Morgan* in identifying systematic violations in pattern or practice cases as a separate issue, and the courts did not consider it further.  *See Davidson*, 337 F.3d at 1186 n. 3; *Lyons*, 307 F.3d at 1107 n. 8.  To do justice to Plaintiffs argument, therefore, the Court must consider the issue here.

The Court is unconvinced that otherwise disparate discriminatory acts are transformed into a single continuing violation because they might be examined collectively at trial.  From the perspective of the

---

[3]*Davidson* was an Americans with Disabilities Act case, in which the Title VII procedural rules were applied.  See 337 F.3d at 1183.

employee, each paycheck which pays less to a protected group is actionable.  This was the holding of *Brazemore*, which, as the *Morgan* court noted, was a pattern or practice case.  *See* 536 U.S. at 112; 153 L.Ed.2d at 121.  The administrative filing requirement is triggered by an "alleged unlawful employment practice," 42 U.S.C. § 2000e-5(e)(1), and *Morgan* quoted *Brazemor*e as authority for its holding that practice applies to a discrete act or a single occurrence: "'[e]ach week's paycheck that deliver[ed] less to a black than to a similarly situated white is a wrong actionable under Title VII . . . .'" *Id.,* quoting 478 U.S. at 395.  Similarly, the Tenth Circuit in *Goodwin* relied on *Brazemore* in holding that, "each . . . discriminatory salary payment constitutes a fresh violation of Title VII."  275 F.3d at 1010.

The purpose of the filing requirement is to give prompt notice to employers.  *See Morgan*, 536 U.S. at 121, 153 L.Ed.2d at 127.  If an employee who suffers discrimination by receiving less pay or less overtime on a certain day does not have an immediately actionable claim because he or she is a potential class member in a future disparate impact case, it is difficult to know when, if ever, the employer would gain notice.  The holding in *Morgan* regarding hostile work environment claims is not to the contrary.

> [F]rom the inception of such an atmosphere [of harassment], an employee might not have any reason to know, within the charge filing period, that the series of events would eventually become cumulatively serious enough to constitute a Title VII violation.  In the case of an overt employer policy, there is not such consideration – it would be obvious from the beginning that a discrete application of that policy was discriminatory.

4 Larson, Employment Discrimination, at § 72.08[4][c], 72-74.

The upshot is that urged by Defendant –  the administrative filing period is not extended by the nature of proof at trial.  *Morgan,* for example, held that a hostile work environment may be a continuing violation, yet the Supreme Court did so without considering the nature of proof at trial.  Indeed, proof in

a hostile work environment case is often anecdotal and specific, not the statistical and general proof which, according to Plaintiffs, would establish a continuing violation here. *See Morgan*, 536 U.S. at 116, 153 L.Ed.2d at 124 (a hostile work environment is shown by proof of intimidation, ridicule, insult, threats, and humiliation).

The Court concludes that its ruling of April 25, 2003, granting partial summary judgment to Defendants for any Title VII class claims regarding events occurring before April 2, 1999, was neither clearly erroneous nor worked a manifest injustice, and that therefore the Court need not revisit the ruling under the law of the case doctrine. Apart from this procedural consideration, the Court also holds as a matter of substantive law that Plaintiffs' compensation and overtime claims do not constitute a continuing violation of Title VII. The cut-off date for purposes of liability remains April 2, 1999, and events before that date may be considered as background evidence in support of a timely claim.

II.    PLAINTIFFS' MOTION TO DECERTIFY

The statements and documents showing the progress of this issue are part of the record and need not be repeated here. Suffice it to say that Mary Dean, Faith Bridgewater, and Verlene Maholmes have persisted in their demand for a "consultant's fee" to be paid from 15% of any attorney fees obtained by Class Counsel. Dean appeared at the hearing and addressed the Court, and nothing she said shows a willingness or inclination to withdraw this demand.

As it noted in its Memorandum and Order of April 25, 2003, the Court has a continuing duty to monitor the adequacy of representation and to address conflicts of interest which may develop. *See In Re Integra Realty Resources, Inc.*, 262 F.3d 1089, 1112 (10th Cir.2001). The issues are whether the named plaintiffs have conflicts with the other class members, and whether the named plaintiffs will vigorously

-15-

prosecute the action on behalf of the class. *Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1187-88 (10th Cir.2002).  In the language of the rule, members of a class may sue on behalf of others only if, "the representative parties will fairly and adequately protect the interests of the class." Fed.R.Civ.P. 23(a)(4).

It is evident to the Court that Dean, Bridgewater, and Maholmes will not fairly and adequately protect the interests of the class.  Their refusal to retract their request, even after Class Counsel pointed out the conflict of interest, shows that they are putting their own interests before the class.  A conflict of interest was shown where two class representatives were stockbrokers for class counsel, and the stockbrokers had an incentive to maximize attorney fees in the hopes the fees would be invested with them. *In re Discovery Zone Securities Litigation*, 169 F.R.D. 104, 108 (N.D.Ill. 1996).  Here, similarly, the demand of Dean, Bridgewater, and Maholmes for a portion of the attorney fees would create a motivation for them to maximize attorney fees, not recovery for the class.  This puts them at odds with the rest of the class, and the Court exercises its duty by rescinding its certification of them as Class Representatives. Dean, Bridgewater, and Maholmes remain members of the class, however, and as such they continue to be represented in this matter by the current Class Counsel.

III.     *PRO SE* MOTIONS REGARDING CLASS COUNSEL

Dean, Bridgewater, and Maholmes made numerous allegations against Class Counsel in their *pro se* filings, and they had opportunity at the November 13, 2003, to develop the record on this issue.  There was nothing additional from Dean, Bridgewater, and Maholmes, however, and Dean retreated somewhat from the assertion that Class Counsel does not adequately represent members of the class who are black. Dean also said that she no longer sought separate counsel for black class members.  Dean did suggest that

-16-

a local attorney, who had not been retained and was not at the hearing, should be ordered to join with existing Class Counsel, but only as "part of the team" and not on behalf of the black class members.

Regarding any issues of race not retracted at the hearing, the Court finds that the allegations made by Dean, Bridgewater, and Maholmes are conclusory and limited to their own perceptions. There is no credible evidence before the Court that Class Counsel has or will discriminate against black class members.

The Court is also satisfied that Class Counsel are adequately serving the interests of the class without the addition of another attorney from outside the Hagens Berman or Hutton & Hutton firms. Class Counsel persuasively explained how the size and complexity of the case would make it difficult, without imposing unacceptable delay, for new counsel step into the matter now. *See* Class Counsel's Supp. Memo. of Law (Doc. 292).

Turning to the other allegations in the *pro se* filings, Dean, Bridgewater, and Maholmes claim that Class Counsel solicited them to serve as Class Representatives. The Court finds that the declarations and other assertions by Dean, Bridgewater, and Maholmes on this point are not credible. Most of the remaining Class Representatives have filed declarations stating they were not solicited, and based on these the Court finds that Class Counsel did not improperly solicit the Class Representatives. *Cf*. 5 A. Conte & H. Newberg, Newberg on Class Actions, § 15:4 (4th ed. 2002) (based both on the First Amendment and on a pragmatic understanding of class action lawsuits, courts are generally less concerned with solicitation than in the past); 1 Newberg on Class Actions, § 3:42, 536 (most courts refer defendants to disciplinary authorities rather than deny certification when the complaint is an ethical violation such as solicitation).

Dean, Bridgewater, and Maholmes have also complained that Class Counsel failed to keep them informed. The remaining Class Representatives do not share this view, and the Court's own review of the

matter shows that the events in question were largely routine such as scheduling orders and status reports. The Court further finds that Dean, Bridgewater, and Maholmes reacted with suspicion when they learned that these items were filed or heard without their knowledge. How and when a lawyer should inform a client about the details of case management is a matter which varies in practice, but the Court finds that the expectations of Dean, Bridgewater, and Maholmes were unreasonable. Class Counsel were responsive to the Class Representatives' legitimate need to remained informed.

IT IS THEREFORE ORDERED that Plaintiffs' Motion to Modify the Class Period (Doc. 236) is DENIED; Plaintiffs' Motion to Decertify Mary Dean, Faith Bridgewater, and Verlene Maholmes as Class Representatives (Doc. 256) is GRANTED; the *pro se* Motion for Time of Nondispositive Motions (258) is MOOT; the *pro se* Motion to Remove Hagens Berman and Hutton & Hutton as Class Counsel (Doc. 259) is DENIED; and the *pro se* motion to add additional counsel made orally by Mary Dean at the November 13, 2003, hearing is DENIED.

IT IS FURTHER ORDERED that Plaintiffs' motion for Andrew M. Volk to appear pro hac vice (Doc. 293) is GRANTED.

SO ORDERED this __26th__ day of November, 2003.


  s/ Wesley E. Brown
Wesley E. Brown, Senior U.S. District Judge

-18-